**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| Whaleco Inc., a Delaware company, ) | |
| ) | No. 2:23-cv-02606-DWL |
| Plaintiff, ) | |
| ) | |
| vs. ) | Phoenix, Arizona |
| ) | December 15, 2023 |
| Temu-dl.com, a domain name; and ) | 1:06 p.m. |
| DOES 1-5, unknown individuals, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**BEFORE:   THE HONORABLE DOMINIC W. LANZA, Judge**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRO HEARING**

Official Court Reporter:
Scott M. Coniam, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                     A P P E A R A N C E S

 2   For the Plaintiff:

 3           Snell & Wilmer
             By:  David G. Barker, Esq.
 4                Emily R. Parker, Esq.
             One East Washington Street, Suite 2700
 5           Phoenix, Arizona 85004

 6           Snell & Wilmer
             By:  Christopher D. Bright, Esq. (Zoom)
 7           Plaza Tower
             600 Anton Boulevard, Suite 1400
 8           Costa Mesa, California 92626

 9           White & Case LLP
             By:  David Okano, Esq. (Zoom)
10           Two Palo Alto Sq., Ste. 900
             3000 El Camino Real
11           Palo Alto, California 94306

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | (Proceedings convened at 1:06 p.m.) |
| 3 | THE COURTROOM DEPUTY:  This is civil case number |
| 4 | CV 23-2606, Whaleco Incorporated vs. Temu-dl.com, set before |
| 5 | the court for a motion hearing. |
| 6 | Counsel of record, please announce your appearances. |
| 7 | MR. BARKER:  Good afternoon, Your Honor.  I'm David |
| 8 | Barker and I have with me Emily Parker, from Snell & Wilmer, |
| 9 | for the plaintiff. |
| 10 | By Zoom I also have Mr. David Okano, who is with |
| 11 | White & Case, and my partner, Chris Bright, at Snell & Wilmer, |
| 12 | who is in our Orange County office. |
| 13 | THE COURT:  All right.  Welcome. |
| 14 | MR. BARKER:  Thank you. |
| 15 | THE COURT:  All right.  This is the time set for the |
| 16 | hearing on plaintiff Whaleco's motion for a temporary |
| 17 | restraining order.  It's at Docket Number 5.  It was also filed |
| 18 | as a motion for leave to serve the defendants through |
| 19 | alternative means.  I've already granted that aspect of it. |
| 20 | But before getting into the merits of the TRO, I wanted to hold |
| 21 | this hearing. |
| 22 | I do note I had some ability to quickly go through the |
| 23 | docket and it seems that a number of these cases have been |
| 24 | filed and some other judges have granted the type of relief you |
| 25 | are seeking here, so I am -- have somewhat familiarity with |

1  that, but I guess I'll just start by turning it over to you to
2  make your presentation and then I may follow-up with some
3  questions.
4          MR. BARKER:  Thank you, Your Honor.
5          And if the court approves, Mr. Okano and I have split
6  up some of the aspects to discuss.  I plan to discuss more the
7  procedural aspects and then Mr. Okano will have the substantive
8  trademark and cybersquatting aspects, if that's okay.
9          THE COURT:  Okay.  I guess I will start.  It seems to
10 me -- I'm not going to take much convincing on the merits of
11 the showing that the unnamed defendants in this case have
12 engaged in the tortious conduct that you alleged.  My questions
13 are more about some of the procedural things.
14         MR. BARKER:  Would you prefer that I just start with
15 the argument or would you like to address the questions?
16         THE COURT:  Why don't you just start with the
17 argument.
18         MR. BARKER:  Okay.  So under the Anticybersquatting
19 Consumer Protection Act, we filed in rem against the domain
20 name Temu-dl and that is because the registrant is unknown to
21 us.  The "who is" information that we provided with our
22 complaint reflects a privacy service, which is common, meaning
23 we don't know who actually registered this domain name.
24 Withheld for Privacy is the privacy service that puts its
25 information in place of the registrants.  And with that, we

1  don't know where -- who actually registered this.  In our
2  experience, they're most of the time out of the country.  Most
3  of the time the actual information they provide to the domain
4  registrar, which is Namecheap in this case, is inaccurate
5  information, so the Cybersquatting Act permits us to proceed
6  in rem against the domain name itself.  And we filed here in
7  the District of Arizona because that is where Namecheap, the
8  registrar, is located and is subject to jurisdiction.
9           We've also asserted claims under -- for trademark
10 infringement under § 1114 of Title 15 of the U.S. Code for
11 trademark infringement.  We don't know who the actual defendant
12 is at this time, but we expect to receive that information in
13 due course.  Regardless, it's alternative relief because the
14 primary relief we are seeking is for a transfer of the domain
15 name which is relief available under the in rem provisions of
16 the Cybersquatting Act.
17          We have provided notice to the -- both to Namecheap as
18 the registrar.  Namecheap has a reporting mechanism through its
19 abuse@Namecheap.com e-mail address.
20          We've also delivered hard copies of the complaint and
21 other filed documents to Namecheap's corporate address, as
22 we've indicated in our papers.
23          Namecheap also has a proxy e-mail address that's about
24 30 characters followed by, you know, a domain name that they
25 say they will forward to the actual registrant.  We provided

1   the filings through that proxy e-mail address as well as
2   reflected in our notice of alternative service that we filed
3   about an hour ago pursuant to the court's order approving
4   alternative service.
5          We plan to also provide notice in that same manner for
6   any order that issues on our motion for temporary restraining
7   order and setting a hearing for the preliminary injunction.
8          Those are the procedural aspects that I felt
9   appropriate to address, but I'm happy to answer any questions
10  the court has.
11         THE COURT:  All right.  So the questions I have -- I
12  guess the aspects of the draft TRO that's been presented to me
13  that -- I'm not saying I necessarily have problems with but I
14  have questions about have to do with the direction of
15  injunctive relief that is directed at Namecheap or at the
16  Withheld for Privacy ehf.
17         The general rule is that you only bind the parties in
18  a case and Namecheap and Withheld for Privacy are not parties
19  here.  I know it's a little different because it's an in rem
20  action and that complicates things a little bit, but it's not
21  entirely clear to me -- I know you've asserted that those two
22  entities are in active concert or participation with the
23  unknown defendants, but that's -- I guess I need a little more
24  explanation on that because simply historically acting as the
25  registrar of a domain name, it's not clear to me that they are

1    actively participating in the subsequent acts of infringement
2    that would be occurring after the TRO issued.
3            MR. BARKER:  Understood.
4            David, would you like me to address that or is that an
5    issue you'd like to address?
6            MR. OKANO:  Sure.  And -- David, I can start out.
7            Your Honor, thank you for the expeditious hearing.
8    I'm David Okano for White & Case.
9            The -- so your concerns are well founded.  And what we
10   have done and we have attempted to do, I think, at least
11   working with Mr. Barker and our firm, is to try to allay these
12   concerns and make our relief limited.
13           I will start out by saying there are -- I would say
14   there's two different aspects of orders that are possible in
15   this case.  There are the orders under the anticybersquatting
16   claim, 1125(d), and then there's kind of the orders under what
17   I would call the more traditional Lanham Act trademark
18   infringement claim.
19           And now for the cybersquatting -- anticybersquatting
20   claim under 1125(d), there is actually relief in -- when the
21   court's jurisdiction is in rem, as it is here, there's actually
22   relief that is authorized against the registrars.  And so that
23   would be under 1125(d)(2)(D) -- it's hard to distinguish
24   between the lower and upper case.  But the remedies are for
25   preventing the transfer, suspension, or modification of domain

1  names once an action has been initiated -- that's (ll) and then
2  (1) is -- or (ii) the domain name -- once -- a pending
3  preliminary injunction hearing is actual transfer of the domain
4  name to the plaintiff and that would be Whaleco.
5         So for the ACPA claim, I think there is a statutory
6  basis for orders against the registrar.  Now -- and then you
7  are correct in terms of the non-ACPA aspects of our claim.
8  There is some hesitation but we -- you know, we have -- as
9  Mr. Barker laid out, we have sent Namecheap, you know, several
10 amounts of correspondence telling them -- explaining to them
11 exactly what marks are laid out.  I mean, they have
12 processes -- their own terms of service where they agree to
13 investigate.  And we have made very clear that, you know, these
14 websites are using the TEMU mark content wise in an infringing
15 manner and putting them on notice that we consider their
16 continued, you know, keeping the site active as an act that
17 would -- you know, act of collaboration of in concert with the
18 domain name.
19        THE COURT:  All right.  Another question I have has to
20 do with -- the last part of the TRO states that pursuant to
21 Rule 65 -- I guess it's the subpart two of the last page of the
22 TRO, you ask me to affirmatively order Namecheap and Withheld
23 for Privacy to provide various forms of contact information.
24        I understand why you want the contact information and
25 I think eventually or perhaps through a different procedural

1   vehicle you can get it, but it's not clear to me
2   that procedurally the right way to get this is to tack this
3   into a TRO request.  It seems to me that a TRO request is
4   simply to enjoin a party and perhaps the parties that are in
5   active concert with it and what this is, is a discovery
6   request.  It's an early discovery request, but there are
7   circumstances in which early discovery is permissible.  I think
8   this is probably one of them.  But just trying to be precise on
9   this, it's not clear to me how this is an appropriate part of a
10  request for a TRO.
11          MR. OKANO:  And, Your Honor, I'll let Mr. Barker also
12  talk about -- on this in terms of the mechanism for relief, but
13  one of the reasons we are asking for this is because there's
14  also -- you know, once this TRO issues, if it issues, we hope
15  it -- you know, in some ways there will be some order.  There's
16  questions about notice to the other party.  And so, you know --
17  I don't want to say it's a chicken and an egg problem because
18  it's not really, but what we are faced with is, you know,
19  providing notice to the domain name which has concealed its
20  identity of the pending preliminary injunction.  And, you know,
21  one way to do that is to get the identity, which, you know, the
22  registrars do occasionally turn over and then give them notice.
23  And if we don't have that, then there becomes a question of,
24  well, what can we do to provide, you know, fair notice so that
25  they have the opportunity to appear and respond, if they so

1  desire.
2         THE COURT: No. I guess -- I understand all that. I
3  understand why you want the contact information. It's just not
4  clear to me why that's something that I'm allowed to do as part
5  of a TRO.
6         MR. BARKER: And if I can add to what Mr. Okano
7  suggested. If we -- you know, if we get to the remedies in
8  this case, if there's a default judgment and we move for
9  relief, the statute authorizes action against Namecheap as the
10 registrar to transfer the domain to us. So it's not -- so
11 we're still looking at the scenario where the defendant doesn't
12 show, which we don't expect them to. I mean, they might, but
13 we don't expect them to. And so that's the eventual relief we
14 would get. And so we don't believe that Rule 65 is -- you
15 know, it's outside the bounds of Rule 65 to ask for the court
16 to have this information now so we can do all we can to get the
17 actual defendant in front of the court, which we need to know
18 the contact information so we can do that and we're not acting
19 through Namecheap. And so I believe that's a basis for the
20 court to order relief both because it can, on a default
21 judgment, order relief against Namecheap and that it should now
22 so we can decide -- we can have the actual person here, but not
23 only that, because there are jurisdictional issues relating to
24 where this person is located. For example, if we can get -- if
25 the actual person's located here in Arizona and we can get

|     |                                                                              |
| --- | ---------------------------------------------------------------------------- |
| 1   | personal jurisdiction over the actual person, then we don't                  |
| 2   | have an in rem cause of action.  In rem -- if you can get                    |
| 3   | personal jurisdiction over the registrant, we don't have an                  |
| 4   | in rem cause of action.  So it's jurisdictional.  And why, yes,              |
| 5   | I believe early discovery would be a way to address that, we                 |
| 6   | believe the court has the authority to order Namecheap to                    |
| 7   | divulge the information now.  It's a very limited form of                    |
| 8   | relief.  Namecheap has the information and there's no burden on              |
| 9   | Namecheap to disclose it.  Those would be my additional points.              |
| 10  |             THE COURT:  Does 1125 have any statutory provision               |
| 11  | that specifically talks about requiring registrants to turn                  |
| 12  | over contact information?                                                    |
| 13  |             MR. BARKER:  I am looking.                                       |
| 14  |             I don't believe it talks about turning over contact              |
| 15  | information.                                                                 |
| 16  |             THE COURT:  All right.                                           |
| 17  |             MR. BARKER:  It required -- there are numerous notice            |
| 18  | provisions for us to send information to the registrant, but I               |
| 19  | don't see any provision that specifically requires the                       |
| 20  | registrar to turn over the contact information.                              |
| 21  |             THE COURT:  All right. Putting aside Namecheap.  I               |
| 22  | have probably more questions about my authority in a TRO to                  |
| 23  | order an Icelandic company that's a nonparty to turn over                    |
| 24  | information.                                                                 |
| 25  |             MR. BARKER:  Understood.  And based on our                       |

1   understanding of the relationship between the two, we believe
2   an order against Namecheap is sufficient for that -- that
3   information to occur.
4           THE COURT:  Okay.
5           MR. OKANO:  And, Your Honor, if I could add, I will
6   say that there is nothing -- there's no explicit statutory
7   provision that does allow for revelation of the name, but there
8   is -- as we've mentioned earlier, there are explicit statutory
9   provisions that would -- that do order the registrant -- the
10  registrar, I apologize, to act in a certain way and that, you
11  know, includes holding/locking the names and eventually
12  transferring the names.  And so there is authority in the
13  statute that -- over the registrant for certain acts and
14  certain requirements.  It's just one of those is not
15  necessarily revelation of the contact information.  But as
16  Mr. Barker said earlier, if we knew that, you know, if that
17  information was known and that person was within the state's
18  borders, you know, there would be such that they would -- there
19  would be personal jurisdiction over them, then we would not be
20  able to proceed as we are under the statute in rem.
21          THE COURT:  Okay.  Thank you.
22          The last question I have -- there's one provision in
23  the proposed TRO that just seems anticipatory and unnecessary
24  to me and it is on the bottom of page 3.  It says, pursuant to
25  15 U.S.C. 1125, 1, Namecheap is prohibited from the transfer

```
 1   and, 2, upon entry of the preliminary injunction, Namecheap
 2   must transfer the infringing name to Whaleco.
 3           I mean, why am I putting that in there if we're not at
 4   the PI yet?
 5           MR. BARKER:  Good point, Your Honor.  I mean, I --
 6   unless Mr. Okano has -- I don't think we need that in the TRO.
 7           THE COURT:  I don't think it hurts you to take it out.
 8           MR. BARKER:  I agree.
 9           MR. OKANO:  I echo Mr. Barker's statement.
10           THE COURT:  Okay.  All right.  Anything else?
11           MR. BARKER:  Just logistics.  If the court grants the
12   TRO, of course we will provide notice through the alternative
13   means the court's approved in its order.
14           Does the court plan on setting a preliminary
15   injunction hearing today or would the court like to proceed in
16   another manner?
17           THE COURT:  Just a moment.  Always good to relook at
18   Rule 65 just to make sure I'm following it to a T.
19           All right.  Here I -- if you have other thoughts on
20   this, I'm happy to hear them.
21           You know, the TRO expires at the time of entry not to
22   exceed 14 days, unless the court sets -- unless before that
23   time the court for good cause extends it.
24           I guess what I'd presumptively be inclined to do is
25   issue this TRO, set a PI hearing for 14 days from now.
```

1    I suspect nobody wants to have a PI hearing on
2    December 29th but I think that presumptively that's what I
3    should do.  But then at some point between the issuance of the
4    TRO and whatever other rulings I'll be coming up with today,
5    I'd be open to a motion from you, based on the developments of
6    service and that sort of thing, to ask for another 14 day
7    extension of the TRO and to reset the PI for another 14 days
8    beyond that, but I don't think I should or could do that right
9    now.  I think I need to wait for some intervening steps.
10             MR. BARKER:  I think that makes sense.  Although,
11   would the court like to set a date by which the defendants must
12   respond to the motion we filed?
13             If the court sets an order to show cause for the
14   defendant to appear at the preliminary injunction hearing, it
15   would be reasonable for the defendants to have a period of time
16   to respond to the TRO motion we filed but --
17             THE COURT:  I'm hesitant just because I -- I want to
18   see what plays out with -- I think, as I'll get to in a moment,
19   you know, I'm going to -- there's going to be a way for you to
20   get an order requiring Namecheap to turn over more information
21   and I think that will give me even more comfort that the
22   unknown defendants have notice to this action after we've gone
23   through that.  I know that I've authorized alternative service
24   and you've already served it through that mechanism, but I
25   think it's probably better to let those steps play out a little

1   bit first.

2   MR. BARKER:  Understood, Your Honor.  Thank you.

3   THE COURT:  All right.  Here's what I'm going to do.
4   So I am going to, in large part, grant the TRO request.  And I
5   will issue a variant of your proposed order afterward making
6   sure I'm setting forth all the findings.  But broadly speaking,
7   I do find that the materials that have been presented to me
8   show a substantive entitlement to the relief sought.

9   I'd also note for the record that although I am quite
10  hesitant to allow a no notice TRO, this is exactly the sort of
11  situation where one is warranted where the evidence that's been
12  presented to me is that the defendants, who are unknown, are
13  taking affirmative steps to hide their identities and in the
14  meantime irreparable harm is occurring.  Under those
15  circumstances, it just does not make sense to postpone the TRO
16  hearing until the actively evading identification defendants
17  have additional reasons to have additional notice attempts.

18  The only modifications to the -- so going down through
19  the draft order granting the TRO, I will order that the
20  defendants and their officers, servants, et cetera, are
21  temporarily restrained from the four categories of information
22  set forth in the proposed TRO.

23  I also agree that defendant Doe 1 should be ordered to
24  provide its true and correct ownership information.

25  As for the next relief for the order that Namecheap be

1  prohibited from the transfer or modification, I will allow
2  that.  I know I raised some questions about it earlier, but I
3  do find that that's appropriate for two reasons.  First, just
4  for the statutory reasons raised earlier, due to this being an
5  in rem action, this is a little bit different than the usual
6  concern about granting relief against nonparties.  And, two,
7  separate from that, you know, the issue about active
8  participation in concert -- although I did find in my research
9  for this hearing one decision and it's Consumer Opinion LLC vs.
10 Frankfort News Corp, 2016 Westlaw 6804607 out of the Northern
11 District of California.  In that case, the court rejected a TRO
12 request that would have forbade the registrar from transferring
13 the domain name during the pendency of the action because the
14 court there found that there was insufficient evidence that the
15 registrar can truly be considered in concert or in active
16 participation with the underlying infringer.  I understand that
17 and that's the reason I asked the questions earlier, but in my
18 mind, I have -- even though Namecheap has done nothing wrong
19 thus far, I have now ordered, as part of my TRO, the unknown
20 defendants not to take any actions to transfer.  So if
21 Namecheap were to, nevertheless, go ahead and try to transfer
22 it at the request of the defendants, that limited category of
23 activity would be in active concert or participation so,
24 therefore, it makes sense to me to include this prohibition in
25 there.  However, I won't be including subpart 2 of that, which

as we discussed earlier, simply talks what might happen when the PI issues.

As to the final page of the draft TRO, I am not going to grant -- I'm not going to include either categories 1 or 2 in the TRO order. I think number 1 is duplicative because I've already just ordered in the previous paragraph Namecheap not to transfer or modify the order.

As for 2, which had requested an order against Namecheap or Withheld for Privacy -- and Withheld for Privacy to provide contact information, for the reasons I stated earlier, I have questions about whether that's permissible relief under Rule 65, but I also think that I have discretion to construe the motion before me as alternatively a request for early discovery not under Rule 65 but just under the usual process for obtaining early discovery. There is an absolute strong basis for that given the allegations and evidence that the unknown defendants are hiding their identity and that Namecheap has that information and is willing to turn over that information as long as they get a court order, so I will grant that construing it as a different motion than the TRO and that will just be issued via the minute entry that comes out of that. That will be reflected in that.

I am not going to grant it, however, as to Withheld for Privacy. For the reasons I've stated, it's not clear to me that that's appropriate under Rule 65, but I have unaddressed

1  questions in my mind about whether I have jurisdiction to issue
2  that sort of order against Withheld for Privacy which has been
3  represented to me to be an Icelandic company.
4          It also seems to me, based on what was explained, that
5  the plaintiff may ultimately not need that information
6  depending on what Namecheap comes up with.  So that's without
7  prejudice.  If at a different portion -- stage of the case the
8  plaintiff decides that it needs to try to get information from
9  Withheld for Privacy, you're welcome to file a motion.
10 Probably want to do a good job of briefing the jurisdictional
11 issues in there, but I think we don't need to go there now.
12         Finally, I don't find that a $1,000 bond is necessary
13 here, so I will waive the bond requirement.
14         Again, the TRO will be in place for 14 days.
15         The PI is provisionally set for December 29th.  I
16 think it's extraordinarily unlikely that's going to proceed,
17 but that's the calendar for now and so I'm expecting something
18 between now and hopefully before Christmas from the plaintiff
19 with an update on the service developments and I would be open
20 at that point to a request to extend the TRO for another 14
21 days and set the PI hearing sometime in January.
22         And in that motion, the plaintiff should also identify
23 whatever deadlines they think would be appropriate for
24 the unknown defendants to respond.
25         I think that's it on my list.  Is there anything else

```
 1   you'd like to address?
 2              MR. BARKER:  No, not from -- not from the plaintiff,
 3   who's the only one here.  But, no, we appreciate your efforts
 4   today, Your Honor.
 5              THE COURT:  Okay.
 6              MR. OKANO:  Yes.  Thank you, Your Honor.
 7              THE COURT:  All right.  Thank you.  Have a good day.
 8              (Proceedings adjourned at 1:32 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# **C E R T I F I C A T E**

1
2
3     I, SCOTT M. CONIAM, do herby certify that I am duly
4  appointed and qualified to act as Official Court Reporter for
5  the United State District Court.
6     I FURTHER CERTIFY that the foregoing pages constitute
7  a full, true, and accurate transcript of all of that portion of
8  the proceedings contained herein, had in the above-entitled
9  cause on the date specified therein, and that said transcript
10 was prepared under my direction and control.
11    DATED this 20th day of December 2023.
12
13
              s/Scott M. Coniam_____
14               SCOTT M. CONIAM, RDR, CRR